33 N.J. Super. 46 (1954)
109 A.2d 435
ALLAN L. TUMARKIN, AS ASSIGNEE FOR THE BENEFIT OF CREDITORS OF EDAN SHOPS, INC., PLAINTIFF-APPELLANT,
v.
MORTON GOLDSTEIN, ROBERT GOLDSTEIN AND JOHN BERTONE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 1954.
Decided November 17, 1954.
*47 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
*48 Mr. Allan L. Tumarkin argued the cause for the plaintiff-appellant.
Mr. Louis Gluck argued the cause for the defendants-respondents.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
On July 12, 1950 Edan Shops, Inc., entered into a lease agreement with the defendants Morton Goldstein and Robert Goldstein (hereinafter referred to as the "landlords") for premises situate in Union City, New Jersey, for the term commencing July 15, 1950 and ending February 28, 1954, at the monthly rental of $375, payable on the first day of each month in advance. The tenant deposited with the landlords $750 as security.
On January 28, 1952 plaintiff was designated as assignee for the benefit of creditors of the tenant.
The appellant contends that the landlords made an unlawful, unreasonable and excessive distraint upon the goods and chattels of his assignor in violation of an oral agreement made between Sidney Zaiden (who had purchased his associate's interest in the business of Edan Shops, Inc.) with the landlords, whereby it was agreed that payment of the monthly rent might be delayed two or three weeks after it became due and payable. The distraint in question was made on January 25, 1952 for the unpaid rent due on January 1, 1952.
The appellant argues that the trial court erred in holding that (1) the proofs failed to disclose a valid agreement to extend the monthly rent payments; and (2) in its instruction to the jury that in determining whether the distraint was excessive, the jury could take into consideration what the goods would have brought "at auction" or "under the hammer."
The judgment from which this appeal stems directs that a judgment of dismissal be entered in favor of defendant John Bertone, and against the plaintiff Allan L. Tumarkin, *49 assignee, &c., on the second count for malice only; of no cause of action in favor of the defendants Morton Goldstein, Robert Goldstein and John Bertone, in pursuance of the verdict of the jury; and judgment of involuntary dismissal in favor of the plaintiff and against the defendants-landlords on their counterclaim, with costs in favor of the defendant John Bertone, only.
Considering the first ground of appeal, it is apparent that it embraces the question as to the landlords' right to distrain. The plaintiff claims that an oral agreement was entered into on August 3, 1951 with his landlords, acting by Morton Goldstein, to accept current rent which, under the lease was due on the first of each and every month, at any time during the month. Mr. Zaiden, who became the sole owner of the corporate business by purchasing the interest of his associate, one Goldman, testified that the agreement was in the early part of 1951 and, in discussing the proposed purchase of his associate's interest with Mr. Morton Goldstein, told him that he would like to take over the corporate business because it was not paying two men to be in the store, that he needed capital and that
"* * * I said I will be pressed for a while now being that I haven't got the working capital. So if I should be held on my rent a bit I don't want you to squeeze me or hurt me in any way. So he sort of nodded and said, `Well, we can get along as long as you, within the next two or three weeks that your rent is due, you pay it and it will be all right.' At that we parted and sort of agreed on that particular way." (Italics ours)
and the plaintiff relies on the aforementioned testimony to establish an oral agreement in modification of the lease. The defendant denies that any such agreement was made. Later, on cross-examination by defendants' counsel, stated further:
"Q. Mr. Zaiden, I understand that you had an agreement with Mr. Morton Goldstein that you could pay rent any time during the month as long as you paid it by the end of the month. Is that so?
A. That's right.";
*50 that Mr. Goldstein replied:
"Within two or three weeks it will be all right as long as it doesn't go into the following month."
It is quite clear that the so-called agreement, if made, was indefinite and uncertain. According to the testimony of Mr. Zaiden, Mr. Goldstein at first specifically indicated he would make no such agreement, but after speaking further to him Mr. Goldstein "sort of nodded" and said, "Well, we can get along as long as you, within the next two or three weeks that your rent is due, you pay it and it will be all right," and they parted and "sort of agreed on that particular way." To effectuate a binding agreement, the agreement must possess definiteness and certainty. This is the recognized rule. Savarese v. Pyrene Manufacturing Co., 9 N.J. 595 (1952); 12 Am. Jur., Contracts, p. 554.
Further, assuming that there had been an agreement, we find that there was no consideration to support it. The rule is established  and counsel so conceded  that there must be a valid consideration for an agreement  a detriment incurred by the promisee or a benefit received by the promisor  and that legal sufficiency does not depend upon the comparative value of the consideration and of what is promised in return. The plaintiff's argument is that the consideration given by the tenant was his purchase of his associate's interest and that interest would not have been purchased for $3,750, unless the landlords had agreed to the extension of the monthly rent payments. If, as argued by the plaintiff, it was a bilateral contract, we fail to discover what the tenant's promise was. The record merely discloses that he informed Mr. Goldstein of his intention to buy out his associate. The controlling factor is the element of bargain or exchange and under the circumstances here, there is a complete absence of that element. The record is completely void of any showing that the landlords requested or were interested in Zaiden acquiring the interest of his associate, nor did the landlords regard it as a consideration for the *51 alleged extension agreement. In effect, consideration is the price bargained and paid for the promise  something given in exchange for the promise. The rule as to the necessity for the element of bargain and exchange is settled in New Jersey. Coast National Bank v. Bloom, 113 N.J.L. 597, 602 (E. & A. 1934); Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., 131 N.J.L. 191, 198 (E. & A. 1943); Wilentz v. Hendrickson, 133 N.J. Eq. 447, 474 (Ch. 1943), affirmed 135 N.J. Eq. 244 (E. & A. 1944), where Williston on Contracts, 320, sec. 100, was quoted to the effect that "Nothing is consideration * * * that is not regarded as such by both parties." See also 1 Restatement of the Law of Contracts, sec. 83, p. 94; 17 C.J.S., Contracts, sec. 74, p. 427; 12 Am. Jur., Contracts, sec. 75, p. 568.
Proceeding now to a consideration of the plaintiff's second ground of appeal, that the distraint was excessive, N.J.S. 2A:33-1 provides that distraints may be taken when authorized by law, "but no unreasonable, excessive or wrongful distraint shall be taken, and for any such taking, the distraining party shall be liable in damages to the party aggrieved." The case of Lipinski v. Frank, 12 N.J. Misc. 174 (Sup. Ct. 1934), is cited by both parties as the only case in New Jersey discovered by counsel's research. We fail to see that the Lipinski case supports the plaintiff's arguments. In that case, all of the goods were distrained and the court characterized their "fair market value" as being ten times the amount of rent due and considered the distraint as "great and unreasonable." The opinion in the Lipinski case is only one page long and there is no indication as to what the distrained goods would have brought "under the hammer," as there was no sale. In the case of Elkman v. Rovner, 133 N.J. Eq. 93 (Ch. 1943), somewhat analogous, the amount brought at the sale played an important part. The notice of the lien set out an amount of rent in excess of that due. The proceeds of the sale resulted in an amount less than the rent claim and the court held at page 104:
*52 "The distraint was not unreasonable nor was it too great, for the rent in arrear greatly exceeded the total amount bid for the fixtures."
If we take the testimony of Mr. Zaiden, an interested party, we arrive at a value of $936.10 to $1,018.10 for the goods distrained, consisting of 6 coats, 3 suits, 15 dresses and the sewing and adding machines. The machines were second-hand, the first purchased in 1950 for $200 and the second in 1948 for $125, and these were the amounts that Mr. Zaiden included in his values. It is interesting to note that in the inventory annexed to the deed of assignment to the plaintiff, the value of 150 garments consisting of dresses, suits and coats, was stated, under oath, by the assignor, to be $750, whereas in the inventory annexed to the distress warrant, the value of the 24 items of wearing apparel distrained is given as $255; the value of the second-hand sewing machine and adding machines, at $125 and $25 respectively.
Clearly, a distraint must be guided by standards of reasonable conduct and motivated by the necessity to satisfy rent arrears and the legal charges arising from the distraint. The satisfaction of the rent arrears and legal charges must of necessity be accomplished by a statutory sale and it is inevitable that "under the hammer" value is a proper guide in determining whether the landlords' conduct has been "unreasonable, excessive or wrongful." Although counsel and the court, as indicated, have not been able to discover altogether analogous New Jersey cases, we find that other jurisdictions hold that a landlord may seize what may be reasonably supposed to be sufficient to realize, at public sale, the rent in arrears. Harms v. Solem, 79 Ill. 460, 462 (Sup. Ct. 1875); Weber v. Vernon, 2 Pennewill 359, 45 A. 537, 538 (Del. Sup. Ct. 1899); Roden v. Eyten, 6 C.B. 427, 136 Eng. R. 1315 (1848). And see, 2 Tiffany, Law of Landlord and Tenant, 2081; and 52 C.J.S., Landlord and Tenant, § 715 (2), p. 572, where it is said:
"* * * However, a mere mistake in judgment as to the value of the property seized does not render the distrainer a trespasser, *53 but he may exercise a reasonable and honest discretion, and he may protect himself by seizing what any reasonable man would think adequate to the satisfaction of his claim."
Our examination of the court's charge convinces us that the pertinent and controlling legal principles were adequately stated with clarity and fairness as to all matters involved in the issues between the parties and we find no error therein. Nor was there any error in the court's failure to charge the particular requests which the plaintiff contends the court should have charged. Where the court's charge, considered in its entirety, as it must be, presents the law fairly, adequately and clearly to the jury, no ground for reversing the judgment exists, though some of the expressions, when standing alone, might be regarded as erroneous. And one may not require the court, in its charge, to use the language one requests, but if the court states the legal principle correctly and intelligently, it suffices. Ristan v. Frantzen, 26 N.J. Super. 225 (App. Div. 1953); affirmed 14 N.J. 455 (1954).
Judgment affirmed.