211 N.J. Super. 558 (1986)
512 A.2d 507
ANGEL NAVARRO AND CARMEN NAVARRO, PLAINTIFFS-RESPONDENTS,
v.
GEORGE KOCH & SONS, INC., DEFENDANT-APPELLANT. and BRIXON MANUFACTURING CO., AND DOLPH CHEMICAL CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1986.
Decided June 11, 1986.
*563 Before Judges O'BRIEN, SIMPSON and SCALERA.
John C. Kennedy argued the cause for appellant (O'Donnell, Kennedy, Vespole and Piechta, attorneys, John C. Kennedy and Mark Robert Vespole, of counsel and on the brief).
William Sellinger argued the cause for respondents, Angel Navarro and Carmen Navarro.
Robert Manning argued the cause for respondent, Brixon Manufacturing Co., (Michael Muscio, attorney, Michael Muscio on the letter brief).
The opinion of the court was delivered by SCALERA, J.S.C. (temporarily assigned).
A jury trial of this products liability case resulted in a verdict against the defendant manufacturer of an industrial oven which exploded causing personal injuries. We reverse and remand for a new trial primarily because the judge's charge to the jury was prejudicially deficient in both substance and form.
Plaintiff Angel Navarro (Navarro) was employed by Electronic Transformer Corporation (ETC) which manufactured and sold electric transformers. The manufacturing process involved dipping the transformers into an epoxy or varnish solution and *564 then baking them in an industrial oven to cure or harden the coating material. On September 22, 1982 Navarro dipped a batch of transformers into either varnish or epoxy and, after the excess had dripped off, placed them on a tray and put them into the oven manufactured by defendant George Koch & Sons, Inc. (Koch). After they were in the lighted oven for approximately one and one-half hours, an explosion occurred within the oven, causing the door of the oven to be hurled some 25 to 30 feet striking Navarro and causing severe injuries.
Angel and Carmen Navarro, his wife, initially filed a complaint against Koch and two fictitious defendants claiming that they designed, manufactured or distributed a defective oven which had exploded and caused his injuries. They asserted negligence, strict liability and breach of express and implied warranties. Meanwhile ETC filed a separate action against Koch for the property damage it had sustained in the explosion. Thereafter, the two cases were consolidated for trial. Subsequently, Koch filed third-party complaints against William Printz and Co., Inc. (Printz), Brixon Manufacturing Company (Brixon) and John C. Dolph Co. (Dolph), seeking indemnification and contribution. Plaintiffs then joined Printz, Brixon and Dolph as direct defendants. By consent, the action against Printz was dismissed before trial.
When selling these industrial ovens, Koch would usually determine the needs and particular applications of the customer and then would recommend what they considered to be the appropriate oven. Sometimes Koch would go so far as to perform sample tests in their own laboratory. However, the oven in this case was purchased by ETC through a telephoned order and identified through a Koch catalogue number. The information communicated to Koch was that ETC was replacing an oven that had been damaged in a fire.
Koch accordingly filled ETC's order for a CDE-17 oven. This oven is the size of a refrigerator with insulated walls, a front door, an electric heating element on the top of the *565 interior, and a fan to circulate air around that element. While Koch made and sold an oven specifically for baking materials which were volatile or flammable, it asserted that the CDE-17 was designed primarily for drying or aging such as occurs in sterilization for autoclaving. When a CDE-17 oven was to be used for the baking of volatiles or flammables, modifications would be made by Koch before shipping. This included installing a separate blower and an appropriate airflow switch and affixing a warning legend or plate specifying the method for use of the oven for such materials.
There was evidence that ETC had ordered numerous ovens from Koch beginning as early as 1940. ETC bought them because they were the right size, never considering whether they were designed specifically for the purpose for which they were being purchased. The CDE-17 oven sold to ETC in this instance was equipped with explosion latches manufactured by defendant Brixon. These latches were designed to allow the oven door to pop open when the pressure inside equaled or exceeded the pressure which kept the door closed. Additionally, the latches were intended to keep the door attached to the oven when it did spring open under such circumstances. Further, it was Koch's policy to package all instructions concerning the component parts of the oven and enclose them in the control panel of the oven on shipment. Also included on the blueprint drawings of the particular oven were installation and operating instructions. The operating instructions "warnings" cautioned that users should bring the empty oven up to temperature before putting items into it, that only perforated trays should be used, and that the oven should not be used in an explosive atmosphere.
When ETC received the oven in question, however, it unilaterally undertook to modify it for its own special purposes. Initially, it vented the oven to the side through a wall and then changed it to vent straight up through the ceiling. It also installed a timer on the oven so that it could be preset to go on and off automatically. ETC "maintained" the oven every four *566 to six weeks. Maintenance consisted of scraping the bottom of the oven to remove the residue of varnish and epoxy, checking the belts of the circulating fan, and greasing the fittings on the shaft and the motor.
ETC's expert, Frank Schwalje, an engineering consultant, testified that despite Koch's intent to limit its use, the CDE-17 was essentially a Class A oven, i.e., an oven for baking volatiles and flammables, rendering it subject to the National Fire Protection Association code requirements for such units. He found numerous design defects in the oven, and concluded that it was dangerous to users.
He found that the fumes were exhausted improperly by a natural draft method, i.e., the hot air of the fumes would simply rise up the vent. Forced ventilation was the method that should have been used. He also said that the safety or airflow switch to the blower was not in a proper location and was not operating properly because it was coated with residue. That switch is designed to sense airflow created by the blower. If the switch detects a lack of airflow to cool the heating element, it automatically shuts down all of the oven functions. Because of its location, however, it only sensed air circulation problems within the oven cavity and did not detect any blockage at the influx site of fresh air. Thus, if the fresh air duct became blocked, it would cause the heaters to overheat and ignite any flammable materials in the oven. This would be avoided if the switch were placed near the inflow duct. He further said that the timer installed by ETC played no role in causing the explosion. It only performed a mechanical operation which did not interfere with any of the safety features installed by Koch. However, he conceded that it was a significant modification about which ETC should have consulted Koch.
Schwalje concluded that the explosion occurred because of insufficient airflow caused either by something blocking the air intake duct or the failure of the blower to operate to cool the heating element. A properly designed and located airflow *567 safety switch or forced ventilation may have prevented this explosion. He found the warnings included on the blueprint to be entirely inadequate since they did not fulfill the posting requirements of the code, were not explicit, and were not properly titled. He concluded that posting a data form as required by the code could have prevented the explosion.
Koch's experts included Frank Peserik, a consulting engineer, who said emphatically that the CDE-17 simply was not a Class A oven and that, as such, ETC was not using it for the purpose for which it was designed and manufactured when the explosion occurred. Additionally, he insisted that the modifications made to the oven by ETC caused the explosion. He said that ETC had "jumpered" the fuses, bypassing all of the safety features installed by Koch. As a direct result, the heaters were allowed to exceed their normal operating temperatures and ignite the flammables baking in the oven, causing the explosion. Peserik also felt that the Brixon "explosion release" latches might not have operated properly. He came to this conclusion because the door had been "creased" across the front. He said that this could have occurred in two ways: when the explosion occurred the upper latches worked and the lower ones did not, or something was leaning against the door when the explosion took place.
Koch also called Dr. Elihu Grossman, a chemical engineer. He observed that ETC's use of solid metal trays in the baking process was contrary to Koch's specific operating instructions, and that the use of solid trays had changed the anticipated airflow pattern in the oven. This permitted flammable vapors to accumulate in the oven and eventually ignite. Further, he determined that the oven was being operated in an explosive atmosphere, placed next to the dipping tanks. He also insisted that ETC did not use the oven as instructed, because they did not bring it up to temperature before inserting the material. Finally, he indicated that Dolph's data sheets failed to warn users adequately of the low flash point of the solvents contained *568 in the solution they sold to ETC. Dolph produced evidence directly to the contrary.
Following the close of evidence, the judge granted Brixon's motion for an involuntary dismissal. The judge observed that Brixon's liability was based solely on Peserik's opinion that the crease in the oven door resulted either from the failure of the lower latch or from something leaning against the door. However, his dismissal was predicated specifically on the absence of any proof that any defect originated while the product was in Brixon's control. The judge submitted the case to the jury as to the remaining parties. The jury deliberated and returned verdicts based on a series of interrogatories. Initially, those verdicts absolved Koch of liability with respect to both plaintiffs.
In the Navarro case they specifically found that the oven was defective but that the defect was not a proximate cause of the explosion. They also found that Koch had failed to give adequate warnings but that this was not a proximate cause of the explosion.
In the ETC claim for property damage, the jury found that a defect in the oven existed but such defect was not a proximate cause of the explosion. It found that Koch had failed to give adequate warnings and that the failure to do so was a proximate cause of the explosion. However, they found that ETC made a substantial change to the oven and that the substantial change was a proximate cause of the explosion. The jury apportioned liability as follows: Koch  35%, Dolph  0%, ETC  65%. With respect to both claims, the jury found that Dolph did not fail to give adequate warnings. The jury awarded Angel Navarro $350,000 for his personal injuries and $50,000 to Carmen for her per quod damages.
The judge found these verdicts to be inconsistent as they related to Koch and directed the jury to redeliberate. However, based on the answers to the interrogatories, he limited their redeliberation to the issue of Koch's failure to give adequate *569 warnings and whether or not that failure proximately caused the explosion. Thereafter, the jury returned verdicts in which they found that Koch had failed to give adequate warnings to both Navarro and ETC, and found that this failure was a proximate cause of the explosion as to both. The judge entered a verdict against Koch in the amount of $350,000 for Angel Navarro and $50,000 for Carmen Navarro. Since ETC's percentage of negligence exceeded that attributable to Koch, he entered a judgment of no cause for action on the ETC claim. After the trial, the judge refused to rule on Koch's motion for a new trial, holding that it was not filed in time.
Koch has appealed from the jury verdicts rendered against it, from the order dismissing its motion for a new trial, and from the order "... entered during trial, dismissing its claims against codefendant Brixon Manufacturing Co., and Dolph Chemical Company." (Since no arguments have been offered by any party to the appeal affecting the jury's determination of "no cause for action" in favor of defendant Dolph, we consider that any appeal against that party has been abandoned). Koch maintains that,
POINT I: THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY AND THEREBY PREJUDICED APPELLANT.
A. The Trial Court Failed To Properly Instruct The Jury With Respect To The Issue Of "Substantial Alteration" Of Appellant's Product.
B. The Trial Court Instructed The Jury That It Could Hold Appellant Liable For A "Defect" That It Previously Declared Was Unsupported By The Proofs.
C. The Trial Court Instructed The Jury To Return A Verdict Against Appellant If It Simply Found That Appellant's Oven Was Defective And Advised The Jury That The Conduct Of ETC Is Not An Issue In The Case.
D. The Trial Court Improperly Permitted The Jury To Draw An Adverse Inference From The Fact That Appellant Declined To Call Physicians To Testify At Trial.
E. The Trial Court Prejudiced Appellant By Inviting The Jury To Consider "Insurance" In Applying The Risk Utility Formula.
POINT II: THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE PRESIDENT OF APPELLANT TO TESTIFY ABOUT THE PRODUCT WHICH WAS THE SUBJECT OF LITIGATION.
POINT III: THE TRIAL COURT ERRED IN DISMISSING APPELLANTS MOTION FOR A NEW TRIAL ON THE GROUND IT WAS OUT OF TIME.

*570 POINT IV: THE ORIGINAL VERDICT RETURNED BY THE JURY WAS NOT INCONSISTENT AND SHOULD BE REINSTATED.

I
Koch contends that the judge's instructions to the jury were deficient in several material respects. A proper jury charge is essential to a fair trial. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210 (1984); State v. Green, 86 N.J. 281, 287 (1981). See Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 563-564 (App.Div. 1951). A jury charge "... must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them...." Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-592 (1966). On appeal, a jury charge must be reviewed in its entirety. State v. Wilbely, 63 N.J. 420, 422 (1973); Jurman, 47 N.J. at 592; Mohr v. B.F. Goodrich Rubber Company, 147 N.J. Super. 279, 283-284 (App.Div. 1977), certif. den. 74 N.J. 281 (1977). If the instructions set forth the principles of law in a clear and complete manner, they are sufficient. Kaplan v. Haines, 96 N.J. Super. 242, 251 (App.Div. 1967), aff'd o.b. 51 N.J. 404 (1968); Abramsky v. Felderbaum, 81 N.J. Super. 1, 7 (App.Div. 1963), certif. den. 41 N.J. 246 (1963); Tumarkin v. Goldstein, 33 N.J. Super. 46, 53 (App.Div. 1954). In addition to setting forth the principles of law, the court must also relate the evidence to the necessary elements "... so that the jury may intelligently and correctly apply the law to the facts as it finds them." McCann v. Biss, 65 N.J. 301, 303-304, n. 1 (1974). Accordingly, the judge has broad discretion to refer to specific evidence in his charge. Borowicz v. Hood, 87 N.J. Super. 418, 423 (App.Div. 1965), certif. den. 45 N.J. 298 (1965); Botta v. Brunner, 42 N.J. Super. 95, 106-107 (App.Div. 1956), mod. on other grounds 26 N.J. 82 (1958); Hare v. Pennell, 37 N.J. Super. 558, 566 (App.Div. 1955). In other words, the judge may comment on the evidence and has the duty to do so, so long as it is to assist and not control the *571 findings of the jury. Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 128 (1958); Borowicz, 87 N.J. Super. at 423; Hare, 37 N.J. Super. at 566-567. In the last analysis, it is a question of whether or not the jury was confused or misled. Latta v. Caulfield, 79 N.J. 128, 135 (1979); Jurman, 47 N.J. at 592; Asbury Park Bd. of Ed. v. Hoek, 38 N.J. 213, 228 (1962); Fitzmaurice v. Van Vlaanderen Mach. Co., 110 N.J. Super. 159, 164 (App.Div. 1970), aff'd 57 N.J. 447 (1971); Moich v. Passaic Terminal & Transportation Co., Inc., 82 N.J. Super. 353, 370 (App.Div. 1964). In products liability cases, the judge must be particularly careful to tailor the instructions to the factual situation in order to assist the jury in performing its function. Suter v. San Angelo Foundry & Machine Company, 81 N.J. 150, 176 (1979).
Essentially, this case involved only a few basic factual and legal issues. Simply put, plaintiffs contended that Koch should have foreseen that the CDE-17 oven would be used to bake flammable and volatile substances. As such the oven was defectively designed because of either absent or inadequate safety devices. Additionally, there was a failure to provide adequate warnings of hazards to ultimate users of such an instrument. Koch defended by asserting that the CDE-17 oven simply was not designed nor intended for baking flammables and volatiles and that they did manufacture another oven specifically for that purpose. In any event, ETC misused the oven to bake flammable and volatile substances and had altered the oven substantially in a manner not reasonably foreseeable which alteration was the sole cause of the explosion. We note at the outset that the proofs do not reasonably support liability based on a manufacturing defect as opposed to a design defect, as will appear from our discussion hereafter. Thus, the submission of that issue to the jury was inappropriate.
Some of the pertinent principles of products liability law are well-settled in New Jersey. A duty is imposed on a manufacturer to ensure that its products as placed into the *572 stream of commerce are suitably safe for their intended uses or reasonably foreseeable uses. Brown v. United States Stove Co., 98 N.J. 155, 165 (1984); Suter, 81 N.J. at 169. If a manufacturer fails to meet that duty, it will be held strictly liable for damages caused by its defective products. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). A defect in a strict liability case can arise from a manufacturing flaw, design defect or inadequate warning. Feldman v. Lederle Labs, 97 N.J. 429, 449 (1984). A manufacturer will be held strictly liable for damages resulting from its product when put to its intended uses or reasonably foreseeable uses. Brown, 98 N.J. at 165.
A manufacturer will also be held strictly liable for design defects notwithstanding a consumer's alteration "... if it is objectively foreseeable that a substantial change in the product will cause injury." Brown, 98 N.J. at 166; Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137, 151 (1984). The critical factor is one of foreseeability. Brown, 98 N.J. at 166. In other words,
[t]he dangers inherent in the product arising out of its subsequent misuse or substantial alteration are not objectively foreseeable by a manufacturer when a product is misused or substantially changed in a manner that could not have been reasonably anticipated by a manufacturer at the time the product was designed and manufactured. [Id. at 167.
A subsequent change is "substantial" only if it relates to or affects the safety aspects of the product and its potential for danger. Soler, 98 N.J. at 148; Brown, 98 N.J. at 167. It is the plaintiff who has the burden of proving that "... it was objectively foreseeable that the subsequent substantial alteration or misuse of the product would create the risk of his injury." Id. at 169.
Also, the issue of proximate cause is implicated in the context of substantial alteration. Here the crucial inquiry becomes whether the original defect in the design constituted a proximate cause of the accident, notwithstanding a subsequent substantial alteration. Soler, 98 N.J. at 149.

*573 ... [A] manufacturer of a product may be held strictly liable for injuries proximately caused by a design defect in that product even if the product did undergo substantial change after leaving the manufacturer's control, if the original design defect constituted either the sole or a concurrent or contributing proximate cause of the accident. [Ibid].
On the other hand it is the manufacturer's burden to prove an intervening superseding cause or another sole proximate cause of the accident. Brown, 98 N.J. at 171; Butler v. PPG Industries, Inc., 201 N.J. Super. 558, 564 (App.Div. 1985).
In this case, the defense of substantial alteration was critical. The charge on that issue was as follows:
With respect to the contention that the oven was changed by Electronic Transformer and that the change was the cause of the explosion, specifically, the change I referred to is the installation or inclusion of a timer on the oven. I indicated to you that a manufacturer has to make a defect free product that remains suitable, safe, even if it has been changed in a foreseeable way. If, in the light of general experiences in the industry when the product is manufactured, the manufacturer objectively and reasonably could have anticipated a change to its oven, then it is still responsible for the safety of the product. If it is foreseeable that a change in the product will be made, the manufacturer is still responsible if the change caused injury or damage. But it is not every foreseeable change that the manufacturer is responsible for. His responsibility continues only if a substantial change is made.
Now, a substantial change, ladies and gentlemen, is a change that relates to, or affects, the safety of the product and its potential for danger. If adding the timer was foreseeable and the addition of the timer was a change that related to or affected the safety of the oven, then Koch is responsible if that change was a proximate result of the explosion. If the change did not affect or relate to the safety of the oven or its potential for danger or if Koch could not reasonably anticipate this kind of change to the oven, then Koch is not responsible.
It is the burden of Electronic Transformer to show that it was foreseeable that this substantial alteration would occur. So to escape liability in the claim made against it, Koch must show that the alteration was substantial from the safety standpoint as I discussed it with you. It has to show that the alteration was the only cause of the explosion. If you find that Electronic Transformer altered the oven or foreseeably misused the oven, if any of Koch's shortcomings whether in design or warnings or manufacture existed at the time of the explosion and even substantially contributed to producing the explosion, you still have to find Koch liable to the Plaintiffs.
We are not unaware of the difficult task facing a trial judge in charging a jury in products liability cases. In such cases, tailored requests to charge may be particularly helpful to *574 the trial court. However, a review of the charge in light of the law set forth above demonstrates its material failure in several respects. The judge never specifically charged that an obligation of proof rested with Navarro. While he said that ETC had the burden to show that it was foreseeable that this substantial alteration would occur, he neglected to instruct that the Navarros were also required to carry such a burden.
Additionally, the proximate cause issue in this case was not clearly set forth. The judge correctly charged that to escape liability Koch must show that the alteration was the sole cause of the explosion. But a manufacturer can also preclude liability if it can prove that the substantial alteration was the sole cause or the intervening superseding cause of the explosion as opposed to a contributing or concurrent cause. In our judgment, the charge did not fairly and accurately communicate this aspect of the law to the jury. Further, these basic principles were not explicated clearly in connection with the evidence peculiar to this particular case. While he charged as to sole cause, he failed to explain the principle of superseding intervening causes, as they related to the alterations made on the oven. As noted, this aspect of the charge was particularly important in this case because of Koch's theory and proofs concerning the changes made by ETC and the testimony concerning how those changes were critical in causing the explosion. This omission was compounded when one considers that in the interrogatories submitted to the jury on the Navarro case, the court failed to include any questions concerning ETC's alteration of the product.
Moreover, although the judge recharged on proximate cause, he only recharged on general proximate cause principles. He never discussed that concept specifically in connection with the substantial alteration defense as it related to the facts of this case. A jury is entitled to an explanation of the applicable legal principles and how they are to be applied in light of the parties' contentions and the evidence produced in the case. The *575 standard for review here is whether there is reasonable doubt that these errors contributed to the verdict. State v. Macon, 57 N.J. 325, 338-340 (1971); Dorn v. Transport of New Jersey, 200 N.J. Super. 159, 166 (App.Div. 1984). In light of the jury's determination that there was a substantial alteration by ETC to the extent that it comprised 65% of the proximate cause of Navarro's injuries, we must conclude that this issue greatly concerned the jury during their deliberations. Consequently, these errors clearly loom as harmful and a new trial is necessitated as between Navarro and Koch. R. 2:10-2.

II
Koch further contends that the trial court erred in submitting to the jury the issue of a manufacturing and design defect in the explosion latches installed on the oven after granting Brixon's motion for an involuntary dismissal. The argument is that there was no proof of a defect in the latches when Brixon shipped them to Koch. Since there was no other competent proof to indicate any other defect which proximately caused Navarro's injuries, the issue should have been eliminated entirely. Navarro demurs, arguing that since the jury ultimately found that the defective latches were not a proximate cause of the explosion the issue is irrelevant. Nonetheless, we address it to lay the issue at rest in anticipation of the retrial of the case.
The latches were purchased from Brixon and installed on the oven by Koch. They were designed to release any sudden and unusual pressure within the oven by permitting the door to be forced open yet remain attached to the oven. The latches had been in use daily for some six years and were maintained only minimally, if at all. Koch's expert testified that the latches were not connected to the cause of the explosion in any manner but "possibly" a malfunction of the latches was responsible for the oven door having been torn loose from the oven. He explained that the crease or dent in the door *576 showed that, either something was leaning against the door before the explosion or that the latches failed to perform as anticipated. We agree with the determination of the trial judge that the evidence in this posture was insufficient to permit submission of Brixon's liability to the jury. There simply was no evidence to demonstrate any act or omission attributable to Brixon which would serve to support a jury determination of liability. (We note that Koch does not specifically argue that the trial judge erred in this respect, nor does any party now urge that Brixon should remain as a party defendant in the action in the event of a retrial). Accordingly, we affirm the trial court's dismissal of the claims against Brixon.
However, Koch complains that the trial court erred in then charging the jury that Koch could be held liable based on the failure of the latches. A close examination of the charge in this regard reveals that the trial court did send this issue to the jury and allowed them to speculate that the latches may have malfunctioned constituting a manufacturing defect in spite of the absence of any evidence to that effect.
It is well-settled that a manufacturer of a product is responsible for its whole product including any component parts incorporated into that product. Michalko, 91 N.J. 386. Therefore, Koch could be held liable for a defect arising from the Brixon latches which proximately caused the injuries, if evidence were produced to support such a theory. The Supreme Court in O'Brien v. Muskin Corp., 94 N.J. 169, 180-181 (1983), elaborated upon the difference between manufacturing and design defects. It defined a manufacturing defect thusly, "... the injury-causing product may be measured against the same product as manufactured according to the manufacturer's standards. If the particular product used by the plaintiff fails to conform to those standards or other units of the same kind, it is defective." Id. at 181. Design defects, on the other hand, cannot be proven by comparison to a manufacturer's standard. *577 They arise from a policy decision that the product's usefulness is outweighed by its risk. Ibid.
In this case there was absolutely no direct evidence that Koch's manufacture of this oven and, in particular, its use of the Brixon latches differed in any way from the manner in which it manufactured any other identical oven. Here, the plaintiffs might have asserted a design defect on the theory that Koch should have used some other type of latches which would have been more suitable and safe. However, there was no testimony to support such a theory. Additionally, as noted, lack of maintenance could have been a substantial factor in causing the latches' failure. In that regard, Navarro argues that "Koch chose these particular latches for this particular oven which it sold and distributed to this particular user. It had a duty to provide maintenance instructions, a duty which it arguably failed to provide." Koch's alleged failure to do so was the equivalent of its duty to warn which issue was generally considered by the jury. Duty to warn cases are classified as design defect cases and not manufacturing defect cases. O'Brien, 94 N.J. at 181. Moreover, plaintiff failed to carry the burden of showing that any manufacturing or design defect, which proximately caused the explosion, existed while the latches were in Koch's control. Michalko, 91 N.J. at 394; Suter, 81 N.J. at 170. On retrial, this issue should be appraised accordingly to determine if it should be submitted to the jury and an appropriate charge rendered.

III
We next turn our attention to Koch's argument that the trial court erred "... in inviting the jury to consider `insurance' in applying the risk-utility formula." We agree with Navarro that the trial court's mere mention of insurance here does not rise to the level of prejudicial error in this case. Runnacles v. Doddrell, 59 N.J. Super. 363, 369 (App.Div. 1960). However, since this case is to be retried, we feel it appropriate *578 to discuss the more general question whether the court should have charged risk-utility factors at all. Preliminarily, we note that Koch's counsel did raise an objection to some of those factors being submitted for the jury's consideration.
In Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 173 (1978), overruled on other grounds 81 N.J. 150 (1979), our Supreme Court explained that in design defect cases the court must first consider whether the proofs warrant submission of the liability issue to the jury at all. In doing so, it directed that the following risk-utility factors should be considered by the court in deciding whether liability is precluded as a matter of law.
(1) The usefulness and desirability of the product  its utility to the user and to the public as a whole. (2) The safety aspects of the product  the likelihood that it will cause injury, and the probable seriousness of the injury. (3) The availability of a substitute product which would meet the same need and not be as unsafe. (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. (5) The user's ability to avoid danger by the exercise of care in the use of the product. (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions. (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance. [Id. at 174].
Once the court decides to send the issue of liability to the jury, it must then decide to what extent the issue of risk-utility should be submitted to the jury in that particular case. Thus, we are instructed that an introductory charge should be given followed by "... any of the ... factors mentioned above ... for which there is specific proof in the case and especial significance ... [Emphasis supplied]." Ibid. at 174-175.
If the case is sent to the jury, ... it would not always be appropriate for the court to include in the instructions to the jury all seven of the factors mentioned above, .... Id. at 174.
Accord, O'Brien, 94 N.J. at 185. Here the issues were whether Koch reasonably should have foreseen the use of that oven in that manner, whether it failed to warn adequately of the dangers of such use or misuse, and whether the alterations by *579 ETC were so substantial as to constitute the sole intervening superseding cause of the explosion. Thus, some of the risk-utility factors outlined above obviously were not in dispute or significant to the issues presented. For example, in this case, there was no dispute that the oven in question was not designed suitably for use in baking the volatile and flammable substances which Navarro was doing. Koch's witnesses conceded that the oven sold for $3,089 and that for only another $350 the safety modifications could have been made easily on this oven. For only $5 more, adequate warnings might have been displayed properly on the oven. Further, there never was a question concerning the availability of a safer substitute product since Koch itself manufactured one for that very purpose. Hence, one can see readily that the trial court erred in routinely charging all seven risk-utility factors. On retrial there should be a careful analysis of the evidence to determine which of the factors comprising risk-utility may be in dispute or are of special significance requiring their submission to the jury as indicated in Cepeda.

IV
Koch complains of the charge given following the jury's question: "Explain to what degree Koch should be responsible for warning or instructing Angel Navarro vs. Electronic Transformer's responsibility to train and instruct employees." The judge instructed that ETC had absolutely no responsibility to train and instruct its employees and erroneously, that the conduct of ETC was not an issue in the case. He followed with a general instruction relating to failure to warn principles. His subsequent attempt to cure this misstatement of the law only served to confuse and mislead the jury regarding Koch's responsibility.
In a products liability case, a plaintiff must prove three factors, one of which is that the defect caused injury to a reasonably foreseeable user. Soler, 98 N.J. at 147; Michalko, 91 N.J. at 394. As previously noted, where the defense is *580 substantial alteration, a crucial issue becomes whether the original defect was a sole, contributing or concurrent cause of the injury, or whether the alteration operated as the sole, superseding intervening cause. Soler, 98 N.J. at 149; Brown, 98 N.J. at 171-172. The trial judge should have set forth these principles clearly and completely for the jury's benefit. Kaplan v. Haines, 96 N.J. Super. 242, 251 (App.Div. 1967), aff'd o.b. 51 N.J. 404 (1968).
In view of the initial verdicts returned, it was apparent that a primary issue which concerned the jury at that point was proximate cause. It would have been more instructive to have recharged on proximate cause, superseding causes and the relationship of these principles to the substantial alteration defense as they related to the specific facts of this case. The judge erred in stating that ETC's conduct was not an issue in the case. That instruction, coupled with the charge that Koch was liable if the jury simply found the oven to be defective, became prejudicially misleading. It virtually removed the issue of proximate cause from the jury's consideration. We conclude that, at that point, the totality of the instructions did not set forth the law in a clear and complete manner. Kaplan v. Haines, 96 N.J. Super. at 251. The jury could only have been confused or misled by what had transpired. Latta v. Caulfield, 79 N.J. 128, 135 (1979); Jurman v. Samuel Braen, Inc., 47 N.J. 586, 592 (1966).

V
Koch also argues that the verdicts originally returned by the jury, in which they exonerated Koch from liability to either Navarro or ETC, were entirely consistent and should be reinstated. We do not agree. The pertinent original verdicts returned pursuant to the court's special interrogatories were as follows:
NAVARRO v. KOCH:
1. (a) Was there a defect (as defined by the Court) in the design or manufacture of the oven? Yes

*581 (b) Was that defect a proximate cause of the explosion? No

2. (a) Did Koch fail to give adequate warnings (as defined by the court) as to the danger of the oven? Yes

(b) Was the failure to give adequate warnings as to the danger of the oven a proximate cause of the explosion? No

ELECTRONIC TRANSFORMER v. KOCH, ET AL
1. (a) Was there a defect (as defined by the Court) in the design or manufacture of the oven? Yes

(b) Was that defect a proximate cause of the explosion? No

2. (a) Did Koch fail to give adequate warnings (as defined by the court) as to the danger of the oven? Yes

(b) Was the failure to give adequate warnings as to the danger of the oven a proximate cause of the explosion? Yes

* * * * * * * *
4. (a) Did Electronic Transformer make a substantial change in the oven (as defined by the court)? Yes

(b) Was that substantial change in the oven a proximate cause of the explosion? Yes

Thus the jury was allowed to and did find that there was either a design or manufacturing defect in the oven and that Koch had failed to give adequate warnings of the dangers thereof. However, they further determined that the manufacturing or design defect was not "a proximate cause of the explosion." With respect to adequate warnings, however, they concluded that there was a failure which was a proximate cause of the explosion as it related to ETC's claim for property damage but not as to Navarro's claim for personal injuries. In addition they found that ETC had made a "substantial change" in the oven which was "a" proximate cause of the explosion.
The verdicts were inherently inconsistent in light of the applicable law which we have reviewed above. The duty to warn extends to all foreseeable users of the product and to uses that reasonably should be anticipated in an objective sense. Campos, 98 N.J. at 206. Therefore, the duty to warn Navarro was as great as the duty to warn ETC. Consequently, if the failure to warn ETC was a proximate cause of the explosion as to ETC's claim, it necessarily had to have been a proximate cause of the explosion as to Navarro's claim. Our conclusion *582 that the verdicts were inconsistent is fortified by our previous observations that the charge as a whole was confusing and misleading.

VI
Koch also takes issue with the trial judge's instruction that the defendant's failure to call any doctors as witnesses allowed the jury to infer that such witnesses would not have contradicted the testimony of Navarro's doctors concerning the injuries he had suffered in the accident. Koch called no witnesses to meet or dispute Navarro's evidence concerning the damages issue in the case. Indeed, even on this appeal Koch does not contend that the jury's assessment of damages was excessive or deficient in any respect.
Our review of that portion of the charge, viewed in light of the evidence produced, convinces us that it substantially followed our determination in Parentini v. S. Klein Dept. Stores, 94 N.J. Super. 452, 457 (App.Div. 1967), certif. den. 49 N.J. 371 (1967). We conclude that no error occurred in this regard. Moreover, we find that any error committed in that respect was harmless and clearly was not capable of producing an unjust result on that issue. R. 2:10-2.

VII
Koch called as a witness its president, Robert Koch, from whom counsel sought to elicit the reasons why the Brixon latches were used in the oven and whether his company had designed and manufactured the CDE-17 oven specifically for baking volatile and flammable substances. The trial court refused to permit such inquiry, ruling that such testimony called for expert opinion. Since his name and report had not been furnished in discovery, the court would not permit such testimony.
Since the case is to be retried the precise basis for exclusion of his testimony may well be rendered moot at this juncture. *583 However, we observe merely that such evidence does not always fall into the category of expert testimony. Evidence Rules 19 and 56 furnish authority for the admission of opinion testimony by a lay witness. See also Teen Ed, Inc. v. Kimball Intern., Inc., 620 F.2d 399 (3rd Cir.1980). Additionally, the discussion in a number of cases involving a claim of defective products furnishes support for the proposition that the testimony of knowledgeable employees is properly admissible in such cases. Brown, 98 N.J. at 163-165; Cepeda, 76 N.J. at 166-167. While such rulings ordinarily invoke the sound discretion of the trial judge, Biro v. Prudential Ins. Co. of America, 110 N.J. Super. 391, 401-402 (App.Div. 1970), rev'd on other grounds 57 N.J. 204 (1970), in the context of this case there may well have been an abuse of that discretion in summarily precluding such testimony for the reasons cited. State v. Carter, 91 N.J. 86, 106 (1982).

VIII
Lastly, Koch's assertion that the trial court erred in refusing to consider its motion for a new trial as untimely is rendered moot by our prior rulings herein. In any event, we invite attention to R. 4:49-1(b); 1:5-1(a); 1:5-2, 1:5-4(b); 1:3-1 and finally, 1:3-3. These rules furnish support for the conclusion that the motion was timely filed and should have been ruled on as such by the trial court.
In sum, the action of the trial court in granting Brixon's motion for an involuntary dismissal is affirmed and Koch's application for a new trial as against Navarro is granted. Maccia v. Tynes, 39 N.J. Super. 1 (App.Div. 1956). However, we see no compelling need to disturb the jury's determination of damages in this case. That issue was fairly tried and determined, and as previously observed, no party to this appeal raises any serious contention to the contrary. Accordingly, the remand of this matter will be limited to the trial of the liability issue between the Navarros and Koch. Greenberg v. Stanley, *584 30 N.J. 485, 506-507 (1959); Tabor v. O'Grady, 61 N.J. Super. 446, 453 (App.Div. 1960).
Reversed and remanded for further proceedings not inconsistent with this opinion.