87 N.J. Super. 418 (1965)
209 A.2d 655
WALTER J. BOROWICZ, AN INFANT BY HIS GUARDIAN AD LITEM, WALTER E. BOROWICZ, STASIA M. BOROWICZ, AND WALTER E. BOROWICZ, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
WILLIAM J. HOOD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1965.
Decided April 30, 1965.
*420 Before Judges CONFORD, KILKENNY and LEWIS.
Mr. Myron W. Kronisch argued the cause for appellants (Messrs. Roskein, Kronisch & Felzenberg, attorneys).
Mr. Edward C. Hillis argued the cause for respondent (Messrs. Marley, Winkelried & Hillis, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
This is an automobile negligence suit for personal injuries suffered by plaintiff Walter J. Borowicz, an infant five years of age, and for a per quod claim by his parents.
The jury returned a verdict of no cause for action in favor of defendant William J. Hood. The trial court denied plaintiffs' motion for a new trial. On appeal to this court plaintiffs urge that (1) they were prejudiced by the trial court's *421 instructions to the jury, and (2) the trial judge erred in conducting a colloquy with counsel, after rendering his charge, within the hearing of the jury.
The essential facts here pertinent may be summarized. The accident occurred on August 5, 1960 in Maplewood, New Jersey, on Brown Street where Henry Street terminates, thus forming a T-intersection. From Hood's deposition it appears that he was proceeding in his car eastwardly on Brown Street when he noticed two small boys on their bicycles on Henry Street entering the intersection. He thought the boys, who were riding close together, "were going straight across the street," and he hit his brakes "very hard." The car came to a complete stop after skidding "quite a ways * * * about maybe forty, fifty feet." Hood said he was not traveling any faster than "twenty-five, twenty-seven, twenty-eight miles an hour, not even that," and that he knew the speed limit in the area was 25 miles an hour. The following interrogation, albeit irregular in part, is illuminating:
"Q. And do you know if applying your brakes scared them?
A. Scared them?
Q. In other words, they heard you apply your brakes?
A. Yes, sir.
Q. And they knew you had stopped?
A. They knew I had stopped, yes, sir.
Q. And then did you start your vehicle again?
A. Right away. I swore at the boys and I started my car up. And I got three-quarters of the way across the intersection and this boy turned right out, right in front of me. And I hit the brake again and he hit the front of my fender. * * *
Q. All right. Now, at what rate was your car going when you applied your brakes for the second time?
A. I was in first gear, hydramatic. I just put it in hydramatic and stepped on the gas, and I had to take it off quickly and hit the brake again."
Officer Schuler, who arrived at the scene within minutes after the accident, gave testimony that he measured the skid marks on the road and found them to be 63 feet in length.
A photograph admitted in evidence shows clearly that the character of the neighborhood was residential, composed of *422 modest dwelling houses built in close proximity to one another.

I.
The court's instructions to the jury are challenged in that they allegedly (a) failed to include any comment as to the skid marks, (b) inadequately referred to the applicable traffic laws respecting "speed limit," "right of way" and "reduced speed" on approaching an intersection, (c) erroneously declared "there was no evidence that he [defendant] actually violated the Traffic Act," and (d) prejudicially stated the infant plaintiff was "not on the sidewalk but in the street" and thereby implied he was unlawfully using the street.
The textual portions of the charge embracing the substance of plaintiffs' criticisms read:
"Now, the next thing that came out in the course of the trial, I am not altogether certain, but out of an abundance of caution there was some testimony by way of deposition that Mr. Hood testified that at the time and place he was operating his automobile at approximately twenty-five, twenty-six or twenty-seven miles an hour and I think he was asked in the deposition as to whether or not he knew the speed limit in that particular zone and I think he said it was, according to the deposition, twenty-five miles. Now, there was no evidence that he had actually violated the Traffic Act, Title 39 but in considering it in connection with your consideration if such be the contention of the plaintiff that he was exceeding the speed limit or if he in fact was violating the Traffic Act or any other section of the Traffic Act even including that of the boy who was also not on the sidewalk but in the street and in your consideration of a contention that either the defendant or the plaintiff violated any section of the Traffic Act you will keep in mind that a violation of the Traffic Act or any section of it, if from the evidence you find that such violation took place, is not of itself negligence. * * *
* * * Now, there has been some talk about the right of way. Well, the right of way is something that you can take into consideration. Our title 39, which is a section of the Traffic Act, points out that when one vehicle is in the intersection the other should yield but, of course, that is a relative right. I mean, if you see the other person is not going to, you know, let you have it you just do not go right on through, you see. So what you have to do is take all of the facts and circumstances under consideration. * * *"
*423 We point out, in limine, that the trial judge has broad discretion in referring to specific evidence in the course of his charge. See Misani v. Ortho Pharmaceutical Corp., 83 N.J. Super. 1, 33 (App. Div. 1964), certification granted 43 N.J. 264 (1964). He may comment on the evidence and frequently it is his duty to do so, provided it is to assist and not to control the jury's findings. Village of Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 128 (1958), citing Wilcox v. Christian & Missionary Alliance, 124 N.J.L. 527, 530 (E. & A. 1940), and Hare v. Pennell, 37 N.J. Super. 558, 566 (App. Div. 1955). See, also, Morie v. N.J. Manufacturers Indem. Ins. Co., 48 N.J. Super. 70, 82 (App. Div. 1957). But note, the opinion of Judge Jayne, speaking for this court, in Stevens v. Roettger, 22 N.J. Super. 64, 66 (App. Div. 1952), which declared, "It is elementary that a trial judge is not obliged to charge matters or comment with regard to the facts of the case * * *."
The decisions in this State have consistently and repeatedly held that no party has a right to have a jury charged in words of his own choosing. The rule was succinctly enunciated in Batts v. Joseph Newman, Inc., 3 N.J. 503, 510-511 (1950). Accord, Village of Ridgewood v. Sreel Investment Corp., supra, at p. 132; Abramsky v. Felderbaum, 81 N.J. Super. 1, 7 (App. Div. 1963), certification denied Abramsky v. Esso Standard Oil Co., 41 N.J. 246 (1963). In Kargman v. Carlo, 85 N.J.L. 632 (E. & A. 1914), Justice Trenchard stated:
"So long as the law is stated correctly and intelligently, the ultimate test of the soundness of instructions is, not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole." (at page 638)
That language has found subsequent espousal in our more recent cases. Vide Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 107-108 (1950); Davidson v. Fornicola, 38 N.J. *424 Super. 365, 371 (App. Div. 1955), certification denied 20 N.J. 467 (1956); Leone v. Rutt's Hut, Inc., 55 N.J. Super. 485, 491 (App. Div. 1959). The acid test is, "would the jury be misled?" Middleton v. Public Service Co-ordinated Transport, 131 N.J.L. 322, 323 (E. & A. 1944).
We have viewed the record in light of the foregoing authorities. While the presiding judge was not obliged to comment upon the skid marks, the plaintiffs were at least entitled to have the jury charged as to the prevailing speed limit under our Traffic Act, N.J.S.A. 39:4-98 and the provision thereof requiring a "reduced speed" when approaching an intersection.
In the face of the photographic exhibit afore-mentioned, coupled with defendant's admitted knowledge that 25 miles per hour was the speed limit in the area of the accident, the trial court erred when it charged the jurors "there was no evidence that he [defendant] actually violated the Traffic Act." Moreover, the instructions as to the right of way at intersections and the comments directed to "Title 39" (N.J.S.A. 39:4-90) were incomplete and inaccurate and had the potential for confusion. Plaintiffs' counsel made timely requests and protestations addressed to those phases of the charge.
Counsel, however, did not object to the court's reference to the statement that the infant was "not on the sidewalk but in the street." The implication therein that a bicycling person is under a statutory duty to stay off the street is unfounded. See N.J.S.A. 39:4-14.1. As noted in plaintiffs' brief, as required by R.R. 1:7-1(c), their objection is raised here for the first time as plain error within the contemplation of R.R. 1:5-3(c). Standing alone, that unnecessary and misleading statement in the charge could reasonably be considered as not affecting the substantial rights of plaintiffs to the extent of constituting plain error. But, in combination with other errors, the cumulative effect of the charge as a whole was so prejudicial as to impel a reversal and mandate for a new trial.

*425 II.
We need dwell only advisorily upon plaintiffs' second point. After the court had rendered its charge, plaintiffs' counsel requested that the jury be excused because of the nature of his objections to be proffered and the length of time anticipated in the presentation of his arguments thereon. The request was denied by the court with the remark, "Why should we excuse the jury to take your exceptions? * * * They are supposed to be in the presence of the jury and you know that. You can give it to the reporter." That ruling violated the letter and spirit of R.R. 4:52-1 which provides that in the argument of counsel on exceptions to the charge "[o]pportunity shall be given to make the objection in open court but out of the presence of the jury." In Zurcher v. Modern Plastic Machinery Corp., 24 N.J. Super. 158, 162 (App. Div. 1952), affirmed o.b. 12 N.J. 465 (1953), the court stated:
"Opportunity should be given counsel to make his objections out of the hearing, but not necessarily out of the presence, of the jury. Usually counsel approach close to the bench and make their objections in a voice that the jury cannot hear."
Note the comment on the tentative draft of the rule (previously Rule 3:5-1) that "[i]t is unfair to counsel to compel him to convey the impression to the jury that the court has charged favorably to his adversary." 2 N.J. Practice 491-492 (rev. ed. 1954). See also F.R. Civ. P. 51; 5 Moore, Federal Practice (2d ed. 1964), p. 2501; Swift v. Southern Ry., 307 F.2d 315, 320 (4 Cir. 1962). In Swain v. Boeing Airplane Co., 337 F.2d 940, 943 (2 Cir. 1964), it was said, "reversal will * * * be called for if there is reasonable basis for concluding that the colloquy had in the presence of the jury as a result of the judge's ignoring or denying a proper request [to excuse the jury] was prejudicial."
In the matter sub judice it developed that the side-bar arguments were in fact lengthy and, on occasion, the exchanges between counsel and the court were spirited, with *426 overtones of acerbity. It is inferable from the record that the jury heard at least part of the colloquy and witnessed the highlights of a legal argument, the loss of which could readily impair plaintiffs' right to an impartial consideration of the case by the jury. At the conclusion thereof, plaintiffs' counsel asked the court to explain to the jury "that the function that Mr. Bender [defendant's counsel] and I just performed is our duty and they should attach no significance to anything that they may have heard or the tone of voices or even the manner in which these objections have been placed on the record." The request was denied.
A fair trial demands adherence to R.R. 4:52-1 as construed by our decisional law.
Reversed and remanded for a new trial.