289 N.J. Super. 267 (1996)
673 A.2d 825
BLODWEN BITSKO, PLAINTIFF-APPELLANT,
v.
MAIN PHARMACY, INC. AND DENIS CAMPBELL, J/S/A, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1995.
Decided April 4, 1996.
*271 Before Judges SKILLMAN, PAUL G. LEVY and EICHEN.
Carol F. Laskin argued the cause for appellant (Ms. Laskin, on the brief).
James J. Carroll, III argued the cause for respondents (Brown, Michael & Carroll, P.C., attorneys; Mr. Carroll, on the brief).
The opinion of the court was delivered by EICHEN, J.A.D.
This is an employment discrimination case. Plaintiff, a registered pharmacist, contends she suffered unlawful gender and age discrimination because she was paid less than younger male pharmacists performing comparable work. The appeal presents issues under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (LAD), concerning the proper methodology for determining gender and age discrimination claims based on unequal pay when brought in the same litigation.
The jury rendered a verdict in favor of defendants on both the age and gender discrimination claims. The jury found "by the preponderance of the evidence" that plaintiff was paid less than the younger, male pharmacists "with substantially similar job descriptions," but concluded that defendants had "a legitimate non-discriminatory reason" for the wage disparity. On this appeal, plaintiff maintains the trial judge should have granted a directed verdict in her favor as a matter of law at the close of plaintiff's proofs, because defendants' purportedly "legitimate nondiscriminatory reasons" amounted to no more than subjective evaluations of plaintiff's performance which, she argues, are legally *272 insufficient as a basis for exempting defendants from the equal pay requirements under the LAD. Plaintiff further asserts that the judge's rejection of her motion for a directed verdict inevitably led to further error in the form of improper evidentiary rulings, jury instructions, and verdict sheets and, ultimately, to the wrongful denial of her motions for judgment n.o.v. or a new trial, from which she now appeals. We disagree and affirm.
In Grigoletti v. Ortho Pharmaceutical, 118 N.J. 89, 109-10, 570 A.2d 903 (1990), our Supreme Court held that in a wage disparity case brought under the LAD on the basis of gender-discrimination, the methodology and standards of the Equal Pay Act, 29 U.S.C.A. § 206(d) (EPA), should be followed rather than the methodology and standards established under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-2 (Title VII). Hence, to make out a prima facie case of unequal pay based on gender discrimination under the LAD, a complainant "must show that an employer pays different wages to employees of opposite sexes `for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974) (quoting 29 U.S.C.A. § 206(d)(1)). See Grigoletti, supra, 118 N.J. at 102, 570 A.2d 903. Once a complainant makes out such a prima facie case, the burden then shifts to the employer to prove by the preponderance of the evidence that the difference in pay is justified by one of four affirmative defenses under the EPA: "(i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex." Grigoletti, supra, 118 N.J. at 102-03, 570 A.2d 903 (quoting the EPA, 29 U.S.C.A. § 206(d)).
By contrast, an age-discrimination case involving unequal pay for equal work asserted under the LAD is governed by the "broader approach" of Title VII, id. at 98, 570 A.2d 903; see Shaner v. Horizon Bancorp, 116 N.J. 433, 437, 561 A.2d 1130 *273 (1989), and imposes a "less exacting" burden on the complainant to prove a prima facie case of job similarity. Grigoletti, supra, 118 N.J. at 101, 570 A.2d 903. On the other hand, the defense of an age discrimination case based on allegations of unequal pay for equal work under Title VII is less onerous for the employer than under the EPA because, under Title VII, the employer need only come forward, without "any particular evidential showing," and "articulate a legitimate reason" for the disparate treatment, id. at 103, 570 A.2d 903, leaving the ultimate burden of proof on the complainant to show age discrimination by the preponderance of the evidence. Id. at 98, 570 A.2d 903.
In this case, it is undisputed that plaintiff established a prima facie case of unequal pay for comparable work based on age and gender under the LAD. Accordingly, the burden shifted to defendants to demonstrate they were exempt from paying plaintiff an equal wage. On appeal, as below, defendants claim they met their burden under the EPA, as to plaintiff's gender-based claim, by showing by the preponderance of the evidence that the pay differential was based on "factor[s] other than sex" (the fourth affirmative defense). Likewise, as to plaintiff's age-based claim under Title VII, defendants claim they met their burden of coming forward to articulate legitimate reasons for the disparity. Implicit in defendant's position is the assertion that factors other than sex under the EPA are substantially equivalent to "legitimate reasons" under Title VII and that the evidence presented was sufficiently objective to overcome plaintiff's motion for a directed verdict and to support the jury's ultimate verdict in their favor.
These are the relevant facts. Plaintiff Blodwen Bitsko, a registered pharmacist, filed a complaint against defendant Main Pharmacy, Inc. and Denis Campbell, the manager and sole shareholder of the company, alleging that the younger, male pharmacists earned higher salaries than she did for the same work in violation of the LAD and that defendants' conduct amounted to a constructive discharge.
*274 Plaintiff began her employment at Main Pharmacy as a part-time pharmacist in September 1977 at age forty-eight shortly before her former employer, Squan Drugs, closed and defendants acquired its prescription files. Plaintiff had been a pharmacist since 1958. In 1979, Campbell hired a full-time male pharmacist and, one year later, in August 1980, plaintiff assumed full-time duties as a pharmacist at Main Pharmacy. Between 1983 and 1988, Campbell added two more full-time male pharmacists, Nicholas DiBenedetto and Glen Rassas, and three additional part-time female pharmacists, and expanded the operation such that the pharmacy employed a total of forty to fifty employees, including clerical and sales help. All the pharmacists had the same duties, which included dispensing prescribed medications, advising customers about medications, and performing other necessary duties. Campbell, as the sole owner of Main Pharmacy, made all employment decisions and worked in the pharmacy approximately sixty hours per week.
In November 1988, the plaintiff learned that she was paid less than the full-time, younger, male pharmacists. It would appear that in 1988, plaintiff earned $34,881.20 in wages whereas DiBenedetto earned $39,331.20.[1] Plaintiff testified that upon learning of the disparity, she felt "shocked, hurt, ... and betrayed," because she had considered Campbell a friend. Plaintiff also testified that she was particularly shocked by the disparity because she had never received any criticism of her work from Campbell, only compliments. She further testified that she was never put on any type of probation, reprimanded, or disciplined, nor was she ever given advice or comments on improving productivity or care during her tenure at Main Pharmacy. After learning of the salary differential between herself and the younger, male pharmacists, plaintiff decided to seek other employment and obtained a pharmacist position at Thrift Drug, earning an additional $10,000 per *275 year. On February 10, 1989, she left her employment at Main Pharmacy, claiming constructive discharge. Thereafter, plaintiff filed the complaint culminating in this appeal.
At trial, Campbell testified that his criteria in assessing employees for salary increases consisted of his personal impression of their economic benefit to the store at that time and in the future. His testimony was drastically different than plaintiff's concerning the value of her work. Campbell testified that plaintiff's performance was not equal to that of her peers in customer service or general speed. He further testified that he often helped her and later was forced to keep a part-time pharmacist on duty to assist at times because of the backlogs created when she was working. While he conceded he did not ever specifically reprimand her about her performance, he did make comments to her suggesting that she needed to increase the pace.
Campbell worked long hours in the store, frequently side-by-side with plaintiff and the other pharmacists, and thus had an ample basis upon which to compare their performances. While the results of Campbell's assessment of plaintiff were not communicated to her, Campbell testified that this was because he believed confrontation was not beneficial and that plaintiff was working to the best of her ability. Explaining his management style, he stated that
[W]hen people are chastised, "get that work out," or "do this," or "do that" it just winds up getting worse after a while. It doesn't make them feel any better; and quite frankly, I don't really feel any better doing it either.
Defendants presented a series of witnesses consisting of plaintiff's co-workers at the time of her employment to corroborate Campbell's assertions about plaintiff's lesser performance. Their collective criticism related to five general areas: (1) that plaintiff was much slower at filling prescriptions than the other pharmacists; (2) that she filled less prescriptions than the other pharmacists; (3) that she consulted with customers far less than the other pharmacists; (4) that she failed to acknowledge or interact with the customers of the store as did the other pharmacists; and (5) that she demonstrated no management potential. Over objection, *276 Campbell presented a random sample of prescription totals for the week of March 7, 1988 to illustrate plaintiff's lack of productivity as compared with the other two full-time, male pharmacists. The evidence showed plaintiff prepared only 328 prescriptions while DiBenedetto and Rassas prepared 527 and 455 prescriptions, respectively, working the same number of hours over the same period of time.
Campbell also stated:
[S]he worked in a way that she wasn't aware of ... the other things that were going on around her.... I mean the phone could ring, and if she was doing a prescription ... she just didn't answer it. People would ask her from the front, did you do one for Mr. Jones? And there would be no response. She did one thing at a time.... She was not aware of the other things around her.
At trial, Campbell admitted he did not employ a seniority or merit system and that payment was not based upon the number of paid prescriptions, essentially conceding he had no formal written or oral policy for determining pay scales. In terms of determining what to pay his pharmacists, Campbell testified that:
The most important consideration would be the overall performance of that individual, and how that ... performance affected the economic benefit of Main Pharmacy today, when we were doing it, and also my perception of what that effect would be down the road, a year, two years, ten years, twenty years.
When asked about the impact that speed and quantity of filling prescriptions had on his salary determinations, Campbell testified:
Well, the number of prescriptions that are filled certainly have an economic benefit ... that was one of the factors in deciding pay raises.... It was just one of many factors that went into the decision.
* * *
[The time it took to fill a prescription] ... mattered as far as the customer service aspect and the benefit of the store was concerned.... [I]t was 10 or 15 minutes longer[.] [C]ertainly it affected the impact on the store [b]ecause the customers would be less satisfied.
On cross-examination, Campbell had further opportunity to explain the considerations that went into his salary decisions. He testified:
[P]ay raises were granted to employees based on, but not limited to, the following factors: The financial condition of Main Pharmacy, taking into consideration the positive cash-flow from the yearly profit of the corporation; the law of supply and *277 demand, with regard to regional availability of registered pharmacists; the competition for registered pharmacists[;] ... the ability of the employee to generate income and profit for the corporation, which would include their ability to develop customer relationships that provide for repeat sales and provide the corporation with an opportunity to grow and prosper; the productivity of the employee, based on his or her overall performance.
In the case of a pharmacist this would include but not be limited to: filling prescriptions; individual personal counseling of customers regarding their prescriptions; telephone communication skills; development of long term customer relations, particularly on a person[al] basis, where a customer's name and face are associated; development of a good relationship with the physicians[, and] . .. the long-term potential of any employee to develop... managerial skills.
The judge instructed the jury separately on the gender and age discrimination claims under the LAD, explaining that each has "a different set of parameters." He properly defined "equal work" and adequately explained the difference in the burdens of proof on an employer depending on whether a gender-based or age-based claim is involved. Under the gender-based claim, the judge explained that "a differential based upon any factor other than sexual discrimination" (the fourth defense under EPA), means "any other reasonable, legitimate factor that would lead him to believe that that is a credible reason, a credible decision based upon something other than sexual discrimination." There was no objection to the form of the judge's explanation. On the age-based claim, the judge explained that defendants' burden was to come forward with "some reasonable articulated reason so as to justify the wage disparity."
At the conclusion of the trial, as reflected on the verdict sheets, the jury found, voting five to one in favor of defendants, that "plaintiff proved by the preponderance of the evidence that she was paid less than male pharmacists with substantially similar job descriptions" and "less than younger pharmacists with similar job descriptions." The jury also found defendants had satisfied their burden of showing, on the sex-discrimination claim, that they had either a "legitimate ... system" or a "legitimate non-discriminatory *278 reason ... to justify any wage disparity,"[2] and on the age-discrimination claim, that they had a "sufficiently valid business reason such as a ... system ... or other legitimate non-discriminatory reason ... to justify any wage disparity."
The essential thrust of plaintiff's argument throughout the trial and on the motions for a directed verdict, judgment n.o.v. and for a new trial, as well as on this appeal, relates to the judge's interpretation of the fourth affirmative defense, "a differential based on any factor other than sex." According to plaintiff, the trial judge erred by referring to the "factor other than sex" as a "legitimate non-discriminatory reason" and by determining that an employer can defeat liability for discriminating against an older female employee performing comparable work by merely presenting "ex post facto gut feelings of subjective merit," a defense, plaintiff argues, that is "incapable of being rebutted." (emphasis omitted) According to plaintiff, the federal court decisions under the EPA reveal that the fourth affirmative defense to a gender-based discrimination claim should not be allowed to serve as "an escape clause ... permit[ting] a defense of subjective merit" because such lenity will result in an evisceration of this State's strong public policy against gender discrimination in unequal pay cases, relying on Grigoletti, supra, 118 N.J. 89, 570 A.2d 903.
On the motion for a new trial, plaintiff argued that in order for defendants to have sustained their burden of proof under the fourth affirmative defense, defendants' proofs had to be "a verifiable, rebuttable factor that existed at the time the employment decision was made." "[I]t has to be something that is objective at *279 the time that it happened," such as direct communication to the employee of the employer's dissatisfaction with some aspect of her work. Therefore, she argued, Campbell's testimony that he was not as satisfied with her work effort as compared with the male pharmacists was not legally sufficient evidence to justify an exemption from the equal pay requirement. Likewise, she argued the testimony of the co-workers was not relevant because Campbell admitted he had never discussed plaintiff's performance with them nor they with him.
In ruling on the motion, the judge discussed the evidence presented by Campbell concerning plaintiff's lackluster performance, and rejected plaintiff's position that only by presenting "articulated," "verifiable" evidence could defendants satisfy their burden of proof. Likewise, the judge accepted the co-workers' testimony as competent evidence to support Campbell's reasons for the wage disparity. The judge stated that not only was it relevant, but it was "necessary" because their observations of plaintiff's deficiencies corroborated Campbell's testimony as well as the fact that Campbell was present on a regular basis to observe plaintiff's performance himself. In rejecting the motion, the judge concluded plaintiff could have presented rebuttal evidence but chose not to do so.[3]
We have reviewed the record, the arguments and factual contentions presented, and prevailing legal principles and conclude the issues raised by plaintiff are all without merit. In analyzing the reasons for the differential salary paid to plaintiff as compared with the younger male pharmacists, for purposes of this case, we perceive the "any factor other than sex" exemption from the requirement of equal pay under the EPA to have substantially the same meaning as "a legitimate non-discriminatory reason" under *280 Title VII. See Grigoletti, supra, 118 N.J. at 110, 570 A.2d 903. In Grigoletti, our Supreme Court observed that "[i]n the federal context, it has ... been recognized that `Title VII and the Equal Pay Act are to be read in pari materia and neither should be interpreted in a manner that would undermine the other.'" Id. at 106, 570 A.2d 903 (quoting Parker v. Burnley, 693 F. Supp. 1138, 1150 (N.D.Ga. 1988)). The Court indicated that the EPA's fourth affirmative defense had actually been incorporated through the Bennett Amendment[4] into Title VII such that any violation of one statute is also a violation of the other. Id. at 107, 570 A.2d 903 (citing Denny v. Westfield, 669 F. Supp. 1146, 1155-56 (D.Mass. 1987); 29 C.F.R. § 1620.27). In this regard, the Grigoletti Court acknowledged the "need to harmonize [the] LAD with Title VII and [as a result] ... borrowed heavily from the federal experience to assure some reasonable degree of symmetry and uniformity." Id. at 107, 570 A.2d 903. See Aldrich v. Randolph Cent. School Dist., 963 F.2d 520 (2d Cir.1992) (observing that "courts have required employers to provide a legitimate business reason for the purported factor-other-than-sex" in applying both the EPA and Title VII); EEOC v. J.C. Penney Co., 843 F.2d 249, 253 (6th Cir.1988) ("[t]he factor other than sex defense does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason.").[5] Thus, we are satisfied *281 the trial judge's use of the term "legitimate factor" in the jury charge and "legitimate non-discriminatory reason" on the verdict sheets instead of "any factor other than sex" was permissible.
We also reject plaintiff's contention that the judge erred in concluding the evidence Campbell presented as proof of his "legitimate non-discriminatory reasons" was legally sufficient. Plaintiff's position is that Campbell's unarticulated, personal evaluations of her job worth amounts to nothing more than pure subjective judgment and, therefore, does not support defendants' claim that the salary "differential [is] based on a factor other than sex." We disagree and note that plaintiff's argument is not supported by legal precedent.
In Equal Employment Opportunity Commission v. Aetna Ins. Co., 616 F.2d 719, 723, 726 (4th Cir.1980), the government expressed its concern that Aetna Insurance Company had made a subjective decision to pay an existing, female employee lower wages than a new male hire who would be performing essentially comparable work. The new employee had been brought in because of his supervisory and managerial potential with the expectation he would expand Aetna's business in a different field of insurance. Id. at 726. The Fourth Circuit concluded that substantial reasons, unrelated to gender, existed for the pay differential and, therefore, the decision "rested on a more solid foundation than mere subjectivity." Ibid. In so concluding, the court referred to the legislative history of the EPA, noting that the "any factor other than sex" defense was a "broad general exception," which included "differences based on experience, training, or ability." Id. at 725 (citing H.R.Rep. No. 309, 88th Cong., 1st Sess. 3, reprinted in 1963 U.S.C.C.A.N., 687, 689). See also Hamburg, supra note 7, at 1095 n. 76 (discussing legislative history of EPA). Likewise, in Schwartz v. Florida, 954 F.2d 620, 623-24 (11th *282 Cir.1991), the Eleventh Circuit recognized that "[s]o long as subjective business justifications, not part of a merit system, are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." The Eleventh Circuit additionally observed in Morgado v. Birmingham-Jefferson Cty. Civ. Defense Corps, 706 F.2d 1184, 1189 (11th Cir.1983), that "[t]he facts necessary to establish that a wage differential has a basis in a factor other than sex are peculiarly within the knowledge of the employer[,] ... [who] will be expected to show the necessary facts." See also Brock v. Georgia Southwestern College, supra, 765 F.2d at 1036 (observing that for allegations of "superior qualities" to qualify as "factors other than sex," employer must at least explain the qualities). The principles we glean from these cases is that an employer must explain his reasons for the wage disparity, and to qualify as objective evidence in support of those reasons, trial testimony concerning the employer's observations of the employee's performance is competent evidence upon which a factfinder may rely to determine whether or not the reasons articulated by the employer are based on "factor[s] other than sex." Objective evidence is not limited to prior articulated criteria for the business judgment resulting in unequal pay for equal work.
Applying these principles to the facts presented in this case, we conclude that the reasons Campbell furnished to justify the wage differential were legitimate business reasons and, therefore, were based on "factor[s] other than sex." We are also satisfied he presented legally sufficient evidence to support his reasons for the wage disparity. The business reasons given by Campbell relate to plaintiff's job performance, specifically, her lesser productivity and ability to develop customer relations and managerial skills. Additionally, Campbell's personal observations of plaintiff's performance, as corroborated by the testimony of the co-employees who observed her at work, constitute objective evidence to demonstrate his disparate treatment of plaintiff as based on "factor[s] other than sex." Campbell adequately explained the *283 importance of these skills to operating a profitable pharmacy, and we cannot say that his conclusions about plaintiff's performance were based only on his "personal, ... ill-informed judgments."[6]See ibid.
We also conclude that the jury had adequate instructions and proper verdict sheets upon which to base its decision. The requirements for the adequacy of a civil jury charge were discussed in Navarro v. George Koch & Sons, Inc., 211 N.J. Super. 558, 512 A.2d 507 (App.Div.), certif. denied, 107 N.J. 48, 526 A.2d 138 (1986). A jury charge "must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them," id. at 570, 512 A.2d 507 (citing Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92, 222 A.2d 78 (1966)), and in the last analysis, the question is whether or not the jury was confused or misled by the charge as a whole. Id. at 571, 222 A.2d 78.
We are satisfied from our review of the charge in its entirety that the jury was not mislead or confused,[7] especially in light of the verdict sheets which focused the jurors on the applicable law and the burdens of proof in the case. These observations aside, however, we are constrained to remark that although pattern charges are often helpful to trial courts in explaining to the jury how it should apply the legal principles to the facts of a case, it is not always sufficient to merely read the principles and define the relevant terms. Here, it would have been better had the *284 judge related the law to the facts. We recognize, of course, that a judge is not obligated to comment on the evidence, Borowicz v. Hood, 87 N.J. Super. 418, 423-24, 209 A.2d 655 (App.Div.), certif. denied, 45 N.J. 298, 212 A.2d 170 (1965). Nonetheless, the better practice in complex cases is to discuss the law in the context of the material facts of the case, reviewing the evidence, where appropriate. See State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). Such comments can assist the jury in reaching correct results and are appropriate provided they are not made to control the jury's findings. Borowicz v. Hood, supra, 87 N.J. Super. at 423, 209 A.2d 655. Notwithstanding, in the circumstances of this case, the omission of judicial comment on the evidence neither denied plaintiff a fair trial nor resulted in a miscarriage of justice. Ultimately, it was for the jury to determine the credibility of Campbell's testimony regarding his reasons for the wage disparity, and it clearly resolved that issue in defendants' favor.
Finally, we reject plaintiff's challenge to the trial judge's decision not to allow her to admit the profit and loss statements of Main Pharmacy and a magazine article discussing wages paid to pharmacists. The judge determined the evidence was not relevant to the issues raised in the case. The trial judge's discretion in excluding evidence is broad and should stand unless so wide of the mark that it results in a manifest denial of justice. Ratner v. General Motors Corp., 241 N.J. Super. 197, 202, 574 A.2d 541 (App.Div. 1990). We perceive no mistake in the exercise of that discretion.
For the reasons expressed, we decline to interfere with the jury's verdict. We conclude that the verdict represents a rational resolution of the dispute between the parties supported by a fair analysis of the record. We find no miscarriage of justice under the law. R. 2:10-1.
Affirmed.
NOTES
[1] The record is unclear concerning the exact wage differentials for the period in question. We present the 1988 salary figures merely to demonstrate generally the nature of the disparity.
[2] The parties agree generally that the first three affirmative defenses which require an employer to demonstrate a "system" did not apply because Campbell admitted defendants did not employ a seniority, merit or production system in making salary decisions. The record reflects, however, the judge included all four affirmative defenses on the verdict sheet with respect to the gender-based claim because he wanted the jury to understand that "the general concepts of merit value and ... production ... could be construed as a valid business, legitimate reason for Mr. Campbell making these decisions." We perceive no error in this ruling capable of producing an unjust result.
[3] Plaintiff contends on appeal she did not present rebuttal evidence because defendants' evidence was irrelevant as coming "after the fact" and, therefore, not probative of "any factor other than sex." For the reasons set forth in this opinion, that argument is without merit.
[4] The Bennett Amendment reads as follows:

It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29.
[42 U.S.C.A. § 2000e-2(h), quoted in Grigoletti, supra, 118 N.J. at 103, 570 A.2d 903.]
[5] The United States Supreme Court acknowledged the importance of "deferr[ing] to industry practice in construing the [EPA] because it recognized that a statute which is not `meaningful to employers and workable across the broad range of industries covered by the Act' could not be complied with by those against whom it was to be enforced." Jeanne M. Hamburg, Note, When Prior Pay Isn't Equal Pay: A Proposed Standard for the Identification of "Factors Other than Sex" under the Equal Pay Act, 89 Colum. L.Rev. 1085, 1094-97 (1986) (quoting Corning Glass Works v. Brennan, supra, 417 U.S. at 198-99, 94 S.Ct. at 2230).
[6] As for Campbell's additional reason that market competition justified the differential in pay, defendants did not furnish an explanation for the purported market disparity between salaries paid to male and female pharmacists and, therefore, we do not consider such factor as a "legitimate reason." We note also that such a "market force" defense is generally disfavored. See Brock v. Georgia Southwestern College, supra, 765 F.2d at 1037.
[7] The fleeting reference to Campbell's own beliefs concerning the reason he gave for the pay disparity did not have the clear capacity to produce an unjust result. R. 2:10-2.