**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5143-17T1
A-5306-17T1

ROBERT TECZA and STELLA
STEPIEN, husband and wife,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

JAMES BARONE and
DANA BARONE,

     Defendants/Third-Party Plaintiffs-
     Appellants/Cross-Respondents,

v.

AKIN ENTERPRISES, LLC,

     Third-Party Defendant.
_____

Argued May 30, 2019 – Decided July 22, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey,
Law Division, Passaic County, Docket No. L-2278-13

and Chancery Division, Passaic County, Docket No. C-000065-16.

Marc L. Dembling and Joseph S. Trapanese argued the cause for appellants/cross-respondents (Methfessel & Werbel, attorneys; Marc L. Dembling and Joseph S. Trapanese, of counsel and on the briefs).

Michael A. Orozco argued the cause for respondents/cross-appellants (Price Meese Shulman & D'Arminio PC, attorneys; Michael A. Orozco, of counsel and on the briefs).

PER CURIAM

These consolidated appeals arise out of a dispute between neighbors over surface water runoff. Third-party defendant Akin Enterprises, L.L.C. demolished the small house on the lot adjoining plaintiffs Robert Tecza and Stella Stepien's home in Wayne and built a much larger house with increased impervious coverage. Akin sold that house to defendants James and Dana Barone in 2008. Plaintiffs thereafter experienced repeated flooding in their basement and yard, with water sometimes standing in their yard for weeks on end. Plaintiffs complained about the water inundating their property to defendants, and in 2011 had an attorney send an engineering report to them detailing the problem. Despite the notice, defendants took no steps to alleviate the problem, believing the water on plaintiffs' property to be "normal rain water flow," not caused by any condition of defendants' property.

2

Plaintiffs eventually sued defendants to abate the private nuisance. Defendants filed a third-party claim against their seller, Akin, which is apparently defunct and never appeared in the action. A jury returned a verdict for plaintiffs, finding Akin created a private nuisance on plaintiffs' property, which defendants negligently maintained by failing to take any affirmative action to remedy after notice. The jury awarded plaintiffs $20,000 compensatory damages for their loss of use of their property, allocated fifty-five percent to Akin and forty-five percent to defendants. The Law Division increased the award by the $9500 the parties stipulated as property damage, allocated in the same manner, and denied plaintiffs' motion for judgment notwithstanding the verdict and defendants' motion for a new trial. The matter was thereafter transferred to General Equity, where a remediation order was entered following a one-day trial by the same judge who presided over the matter in the Law Division.

Both parties appeal. Defendants contend the trial court judge erred in failing to dismiss the case following the Supreme Court's issuance of <u>Ross v. Lowitz</u>, 222 N.J. 494 (2015); improperly delegated to the jury the question of whether defendants had a duty to take positive action to abate a private nuisance; and abused his discretion in failing to instruct the jury that there was

no dispute as to the proper functioning of the seepage pits on defendants' property. Plaintiffs argue the trial court erred in instructing the jury to apportion liability between defendants and Akin as they contend defendants had a non-delegable duty to abate the nuisance and are thus fully responsible for the resulting damages. Defendants also contend the General Equity judge erred in relying on the inadmissible hearsay opinions of an expert who did not testify at the bench trial, thus rendering the remediation order null and void. We find no reversible error in any of these decisions and affirm the judgment in its entirety.

Defendants argue the nuisance claim against them should have been dismissed under Ross, issued shortly before the jury trial in this case, because they did not create the condition on their property and the director of public works for Wayne, George Holzapfel, while conceding there was a drainage problem, testified the construction of defendants' home was in accord with Township regulations and did not alter the general drainage patterns in the area. Defendants reason because they did not create the nuisance and Akin did not violate any Township regulations "there could not be [a] claim for abatement against them" after Ross. We disagree.

A-5143-17T1

Ross did not change the law as to private nuisance claims. The plaintiffs in Ross asserted a private nuisance claim when home heating oil migrated to their property from a leak in a neighbor's underground storage tank. 222 N.J. at 497. The Ross Court emphasized that New Jersey "courts have adopted the standard of Restatement section 822 to assess liability for private nuisance," which permits recovery "if, but only if," the defendant's

> conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> > (a)    intentional and unreasonable, or
> >
> > (b)    unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
>
> [Id. at 505-06 (quoting Restatement (Second) of Torts § 822).]

Finding no evidence in the record that the defendant neighbor, Lowitz, or her predecessor in title "acted negligently, recklessly, or intentionally," and declining to find that maintaining an underground storage tank for home heating oil was an "abnormally dangerous activity," the Court concluded no claim for private nuisance could lie against Lowitz or her predecessor. Id. at 511-12, 521 n.3.

5

Although the majority in <u>Ross</u> acknowledged that section 824[1] of the <u>Restatement</u>, on which the plaintiffs relied, "confirms that two categories of conduct, an affirmative act and a failure to act in circumstances in which the defendant has a duty, can give rise to a claim for private nuisance," it concluded that section "does not expand private nuisance claims into settings in which there is no showing of fault and no abnormally dangerous activity being conducted." <u>Id.</u> at 507. Because the plaintiffs in <u>Ross</u> could not establish Lowitz' "fault or the conduct of an abnormally dangerous activity" on the summary judgment record in that case, "as required by section 822 of the

---

[1] Section 824 of the <u>Restatement</u>, which the <u>Ross</u> Court observed was adopted in New Jersey in <u>Birchwood Lakes Colony Club v. Borough of Medford Lakes</u>, 90 N.J. 582, 592 (1982), <u>see</u> <u>Ross</u>, 222 N.J. at 508, provides:

> The conduct necessary to make the actor liable
> for either a public or private nuisance may consist of
>
> (a) an act; or
>
> (b) a failure to act under circumstances in which the actor is under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.

[<u>Restatement</u> § 824.]

Restatement," the Court concluded they did "not have a viable theory of liability under Restatement section 824." Id. at 511.

The three dissenting justices in Ross would have recognized a cause of action for the failure to timely abate the nuisance, noting the plaintiffs were forced to wait three years after notice for the insurance carriers for the individual defendants to finally remediate the contamination of the plaintiffs' property. Id. at 515-18. The dissenters would have imposed a duty on a landowner "to do what is practicable and reasonable under the circumstances" to remedy conditions on its land "that are a source of harm to others." Id. at 522 (quoting Restatement § 839 cmts. d, e).

Because the "practicable remedy" of removing contaminated dirt is now commonplace in environmental spill cleanups, the dissenters would have imposed a duty on a landowner to abate in a reasonably timely manner "the foreseeable harm to a neighboring landowner from a leaking oil tank spreading its contamination onto another's property." Id. at 522-23. The majority rejected that reasoning, instead hewing to the principle that there can be no liability for a private nuisance in this State "unless the defendant's conduct was 'actionable' within the meaning of section 822 of the Restatement." Id. at 509.

7

This case, of course, does not implicate the obviously vexing problem of addressing leaking underground storage tanks, the condition of which are not plainly visible, in the context of a private nuisance. Instead, the issue here implicates a much older and more common problem, surface water runoff inundating neighboring lands. Our courts have for well over a hundred years recognized the repeated flooding of another's lands is a private nuisance. <u>See</u> <u>Del. & Raritan Canal Co. v. Wright</u>, 21 N.J.L. 469, 470 (Sup. Ct. 1848); <u>Hennessy v. Carmony</u>, 50 N.J. Eq. 616, 618 (Ch. 1892). In <u>Russo Farms v.</u> <u>Vineland Board of Education</u>, 144 N.J. 84, 99 (1996), a flooding case, the Court explained

> a nuisance is continuing when it is the result of a condition that can be physically removed or legally abated. In such a case, it is realistic to impute a continuing duty to the defendant to remove the nuisance, and to conclude that each new injury includes all elements of a nuisance, including a new breach of duty. On the other hand, when the nuisance cannot physically be removed, it is unfair to impose a continuing, impossible to fulfill duty to remove the nuisance; when a court will not order defendant to abate the nuisance, it is inconsistent to recognize a duty to do so.
>
> [<u>Id.</u> at 103.]

More recently, the Court in <u>Lyons v. Township of Wayne</u>, 185 N.J. 426, 434 (2005), held clearly "that flooding can constitute a continuing nuisance"

and explained in accord with the Restatement that "[w]hen analyzing a nuisance, . . . wrongful conduct is not limited to the creation of the condition. Rather, a failure to physically remove or legally abate that condition, resulting in the physical invasion of another's property, also constitutes wrongful conduct."

In contrast to the record in Ross, plaintiffs in this matter alleged at trial that third-party defendant Akin had tortiously, that is negligently, constructed defendants' home so as to cause flooding on their adjacent property and defendants had wrongfully failed to abate the condition after notice. Plaintiffs presented an expert, Matthew Neuls, a civil engineer who testified the increased runoff and flooding of plaintiffs' property were caused by the regrading of defendants' property in connection with the construction of their home. Neuls testified the flooding could be remediated by modification of an existing dry well on defendants' property to collect the water and divert any overflow away from plaintiffs' land.

The Law Division judge augmented the model charge on private nuisance in order to instruct the jury in strict accordance with Ross. Accordingly, the jury was advised it could find for plaintiffs "if, but only if," Akin's and defendants' conduct was a legal cause of an invasion of plaintiffs'

A-5143-17T1

interest in the use and enjoyment of their property, and the invasion was either intentional and unreasonable, or "[u]nintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct." The court made clear the case did not involve intentional conduct or abnormally dangerous activities. The judge also instructed the jury on negligence and explained defendants could be found liable for an affirmative act or the failure to act in the face of a duty. The jury found plaintiffs proved by a preponderance of the evidence that the flooding on their property was caused by Akin's construction activities; that Akin had created a private nuisance; that defendants were negligent in maintaining that nuisance by failing to take affirmative action to remedy the problem; and plaintiffs had suffered injury and were entitled to damages.

Although the court erred in asking the jury whether defendants had an affirmative duty to abate the private nuisance as the existence of a duty is a question of law for the court, see Strachan v. John F. Kennedy Mem'l Hosp., 109 N.J. 523, 529 (1988), the error is harmless because the jury got the answer right. Our Supreme Court abandoned the concept of surface water as a "common enemy," which permitted landowners to rid their property of it in any fashion regardless of the effect on their neighbors, over sixty years ago in

Armstrong v. Francis Corporation, 20 N.J. 320, 327-28 (1956), adopting instead a rule of reasonable use. Id. at 329. Thereafter, the removal of surface waters in this State became "governed by tort rather than property law notions." Bd. of Educ. of Manasquan v. N.J. Dep't of Transp., 69 N.J. 92, 96-97 (1976). As there is no question but that defendants owed plaintiffs a duty under our law to abate any private nuisance caused by the ridding of surface water from defendants' land, see Russo Farms, 144 N.J. at 103, putting that question to the jury was harmless because its finding was in accord with established law, see Mehlman v. Mobil Oil Corp., 153 N.J. 163, 194 (1998).

Defendants' claimed error in the judge's refusal to instruct the jury "there was no evidence of seepage pit failure" requires only the briefest comment. Our review of the trial record convinces us there was no evidence in the record as to whether the seepage pits on defendants' property were or were not functioning as intended. Accordingly, the trial judge was correct to determine not to comment on that evidence and leave it to the parties to argue their respective positions in their summations. See Bitsko v. Main Pharmacy, Inc., 289 N.J. Super. 267, 294 (App. Div. 1996) (discussing circumstances where comment on the evidence is and is not appropriate).

11

Plaintiffs' argument that the trial judge erred in instructing the jury to apportion liability likewise requires but brief comment. Section 834 of the Restatement provides "[o]ne is subject to liability for nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." Comment e to that section entitled, "Continuing liability for harmful physical conditions," explains that

> [a]ctivities that create a physical condition differ from other activities in that they may cause an invasion of another's interest in the use and enjoyment of land after the activity itself ceases. When the invasion continues only so long as the activity is carried on, a person who ceases to have any part in the activity is not liable for the continuance of the invasion by others. But if the activity has resulted in the creation of a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition or who participated to a substantial extent in the activity is subject to the liability for a nuisance, for the continuing harm. His active conduct has been a substantial factor in creating the harmful condition and so long as his condition continues the harm is traceable to him. This is true even though he is no longer in a position to abate the condition and to stop the harm. If he creates the condition upon land in his possession and thereafter sells or leases it to another, he is subject to liability for invasions caused by the condition after the sale or lease as well as for those occurring before. When the vendor or lessor has created the condition his liability continues until the vendee or lessee discovers it and has reasonable opportunity to take effective precautions against it. In

12

> this respect the duration of the liability differs from that stated in § 839. The rule stated in § 373(2) as to the liability of the vendor for physical harm is equally applicable to this Section, and Comment c under § 373 applies equally here.
>
> [Restatement, § 834 cmt. e (emphasis added).]

New Jersey law has long been in accord. See E. Jersey Water Co. v. Bigelow, 60 N.J.L. 201, 204 (E. & A. 1897) (noting "the general principle is clear that one who erects a structure or construction which creates a nuisance, and then conveys to another his title, with covenants with the grantee for quiet enjoyment and the right to maintain the erection, is liable for its continuance upon the ground that by his relations with the occupier he affirms the nuisance, and must be regarded in law as continuing it"); see also Cogliati v. Ecco High Frequency Corp., 92 N.J. 402, 414 (1983) (sidewalk liability); N.J. Dep't of Envtl. Prot. & Energy v. Gloucester Envtl. Mgmt. Servs., 821 F. Supp. 999, 1001-02, 1012 (D.N.J. 1993) (discussing section 834 of the Restatement in the context of municipal liability for maintaining a nuisance at the GEMS landfill).

Given both the substantive law on liability for the creation and maintenance of a nuisance and New Jersey's general approach favoring apportionment of liability, see N.J.S.A. 2A:15-5.1 to -5.4; Kubert v. Best, 432

N.J. Super. 495, 508-09 (App. Div. 2013), we agree with the trial court judge that an instruction on apportioning liability between defendants and Akin was appropriate. Plaintiffs have brought no case to our attention compelling a different approach based on defendants' duty to abate the nuisance and our own research has not uncovered one.

Finally, we address defendants' claim that the General Equity judge erred in relying on an expert report they produced in discovery in the absence of the expert's testimony at trial. Defendants produced the report in response to a report prepared by plaintiffs' engineer in 2014. Plaintiffs' report addressed the two 1000-gallon pre-cast seepage pits Akin installed on defendants' property to contain surface water and prevent runoff. Noting the absence of any percolation or soil permeability rating tests, plaintiffs' expert Neuls posited inadequate permeability of the soils under the drywells could be contributing to their periodic overflow and excessive groundwater affecting plaintiffs' property. Neuls recommended an open grate be placed over one of the seepage pits and the area regraded to capture more water in the area where the two properties meet. Neuls also recommended an overflow pipe be installed in the drywells to drain to the street.

Defendants produced a responsive report by their own civil engineer, David E. Behnken. Behnken recommended installation of a stormwater management system to collect and route excessive runoff along the property line separating plaintiffs' and defendants' properties. He recommended installation of a system similar to the one Neuls proposed or construction of additional drywells. Behnken recommended permeability and groundwater testing in the event additional seepage pits were installed. Neuls issued subsequent reports agreeing generally with Behnken's recommendations, including soil testing before any modification of the seepage pits, and estimating the costs associated with all the recommended improvements.

At the trial before the Chancery judge to address the equitable remedy, defendants presented a different expert who testified defendants' property was not the source of flooding on plaintiffs' property and therefore no alterations on defendants' property would be effective or necessary. Neuls testified for plaintiffs in accordance with his reports. Asked on cross-examination if, following his visual inspection of the seepage pits he agreed with defendants' new expert that the seepage pits were functioning at over ninety percent of capacity, Neuls responded that a visual inspection would permit no opinion on that point. All of the expert reports were admitted in evidence, with Behnken's

15

report being admitted over defendants' objection that the report constituted inadmissible hearsay under N.J.R.E. 808.[2]

The Chancery judge rendered an opinion adopting the recommendations set forth by Neuls and Behnken, including the two new drywells estimated by Neuls to cost $6800. Defendants argue the Chancery judge's reliance on the Behnken report was error as it was inadmissible hearsay, rendering the judgment "null and void." Having reviewed the record, we disagree.

We review a trial court's evidentiary rulings for abuse of discretion, Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008), and disregard any error we deem harmless, Higgins v. Owens-Corning Fiberglas Corp., 282 N.J. Super. 600, 609 (App. Div. 1995). Only those errors "clearly capable of producing an unjust result," will result in a reversal of the judgment. R. 2:10-2.

Plaintiffs having prevailed at trial on their private nuisance claim, they were entitled to equitable relief abating the nuisance, which right defendants do not challenge on appeal. See Sheppard v. Twp. of Frankford, 261 N.J. Super. 5, 10-11 (App. Div. 1992). It was the Chancery judge's obligation to

_____

[2] In the colloquy over admission of the reports, the Chancery judge advised the parties he had already read all of them in preparation for the trial as they had been submitted by counsel as part of their pre-trial submissions without objection.

fashion an effective remedy to end the excessive surface water inundating plaintiffs' property. That task, involving modification of existing stormwater management features, is rarely simple as there are often a variety of measures that might be tried to alleviate the problem and experts often disagree. See id. at 11.

As the Chancery judge noted, defendants' did not present testimony at the remediation trial as to how the nuisance could be abated. Instead, they presented an expert who opined the problem was with plaintiffs' property and not surface runoff coming from defendants' land. The judge characterized the approach as "an attempt at nullification of what the jury already found in the Law Division trial." Left with only the opinion of plaintiffs' expert, including his incorporation of certain recommendations of a defense expert defendants elected not to call at trial, the judge endorsed plaintiffs' approach. As we are confident the learned Chancery judge made no inappropriate use of the evidence, see Williams v. Illinois, 567 U.S. 50, 69-70 (2012) ("There is a well-established presumption that the judge [has] adhered to basic rules of procedure, when the judge is acting as a factfinder." (alteration in original)); State v. Kern, 325 N.J. Super. 435, 444 (App. Div. 1999) (noting "[a] judge sitting as the fact finder is certainly capable of sorting through admissible and

inadmissible evidence without resultant detriment to the decision-making process"), we find no error in the court's admission of the report and certainly not one clearly capable of producing an unjust result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION